SIQUAR USA, Inc., Plaintiff
v.
ADAM WANG, WESTERN CAROLINA WOOD PRODUCTS CORP., WESTERN CAROLINA WOOD PRODUCTS, LLC, SEQUOIA HARDWARE, INC., JEAN WANG, and DOES 1 through 100, inclusive, Defendants
No. COA08-1049
Court of Appeals of North Carolina
Filed: July 7, 2009.
This case not for publication
Young, Morphis, Bach & Taylor, LLP, by Timothy D. Swanson, and Law Office of Peter S. Hwu, P.C., by Peter S. Hwu, for plaintiff-appellee.
Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by Jason White, for defendant-appellant.
CALABRIA, Judge.
Sequoia Hardware, Inc., ("defendant Sequoia"), appeals the trial court's order denying its motion to dismiss for lack of personal jurisdiction. The trial court ruled that the court had personal jurisdiction over defendant Sequoia. We affirm the trial court.
Acting as a middleman, defendant Sequoia, a Florida corporation, contracted with Siquar USA, Inc., ("plaintiff"), a California corporation doing business in Hickory, North Carolina, to purchase furniture and cabinet hardware for shipping to plaintiff's former customers in Florida. Defendant Sequoia made numerous purchase orders orally and in writing to plaintiff in Hickory, North Carolina. After plaintiff received the purchase orders, plaintiff shipped the items to defendant Sequoia's customers in Florida. Plaintiff alleges that defendant Sequoia failed to pay many of the invoices in full when due.
On 11 December 2007, plaintiff filed a complaint. In an amended complaint filed 17 March 2008, plaintiff claimed, inter alia, civil conspiracy; unfair and deceptive trade practices; and for goods sold and delivered, in the amount of $11,319.91. Defendant Sequoia filed an answer to the amended complaint, and counterclaim as well as a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(2) and (6). On 23 April 2008, defendant Sequoia filed an affidavit by Jon Stever, an officer of defendant Sequoia, in support of its motion to dismiss. On 28 April 2008, plaintiff filed an affidavit by Linda Chien, accounting manager for plaintiff, in support of its opposition to defendant Sequoia's motion to dismiss. On 5 May 2008, the trial court denied defendant Sequoia's motion to dismiss. Defendant Sequoia appeals.

I. Standard of Review
"The standard of review of an order determining jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." Tejal Vyas, LLC v. Carriage Park Ltd. P'ship, 166 N.C. App. 34, 37, 600 S.E.2d 881, 884 (2004) (internal citation and quotation omitted). "[A]bsent a request by the parties . . . the trial court is not required to find the facts upon which its ruling is based." Rossetto United States, Inc. v. Greensky Fin., LLC, __ N.C. App. __, __, 662 S.E.2d 909, 912 (N.C. Ct. App. 2008). "In such case, it will be presumed that the judge, upon proper evidence, found facts sufficient to support his judgment." A.R. Haire, Inc. v. St. Denis, 176 N.C. App. 255, 258, 625 S.E.2d 894, 898 (2006) (internal quotation and citation omitted). "[W]e review the record to determine whether it contains competent evidence to support the trial court's presumed findings to support its ruling that Defendants were subject to personal jurisdiction in the courts of this state." Rossetto, __ N.C. App. at __, 662 S.E.2d at 912.

II. Jurisdiction
Defendant Sequoia argues the trial court erred in concluding there is a valid basis for North Carolina to exercise personal jurisdiction over defendant Sequoia. In support of this position, defendant Sequoia contends the North Carolina long-arm statute does not apply; and defendant Sequoia lacks sufficient minimum contacts with North Carolina such that the exercise of personal jurisdiction violates constitutional due process. We disagree.
In Tom Togs v. Ben Elias Industries, the North Carolina Supreme Court set forth the test for determining whether a North Carolina court can exercise personal jurisdiction over a non-resident defendant:
... [A] two-step analysis must be employed to determine whether a non-resident defendant is subject to the in personam jurisdiction of our courts. First, the transaction must fall within the language of the State's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution.
* * *
...We have also held in considering N.C.G.S. § 1-75.4 that the requirements of due process, not the words of the long-arm statute, are the ultimate test of jurisdiction over a non-resident defendant, and, following the mandate of the United States Supreme Court, we have rejected any per se rule of long-arm jurisdiction...
To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" In each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice. This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there."...
318 N.C. 361, 364-65, 348 S.E.2d 782, 785-86 (1986) (Internal citations and quotations omitted).
The North Carolina long-arm statute states, in relevant part, as follows:
A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j), Rule 4(j1), or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:
(5) Local Services, Goods or Contracts.  In any action which:
. . .
d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction; or
N.C. Gen. Stat. § 1-75.4 (5)(d) (2007).
In determining minimum contacts, the court looks at several factors, including: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties.
A.R. Haire, 176 N.C. App. at 260, 625 S.E.2d at 899. "No single factor controls, but all factors must be weighed in light of fundamental fairness and the circumstances of the case." Rossetto, __ N.C. App. at __, 662 S.E.2d at 913.
Plaintiff alleges that, during his employment with plaintiff from 1999 through 2007, defendant Adam Wang ("defendant Wang") secretly organized businesses to compete with plaintiff; that, in 2002, while employed by plaintiff, defendant Wang formed defendant Sequoia Hardware, Inc., a Florida corporation; and that defendant Sequoia sold furniture and cabinet hardware to plaintiff's customers in Florida. By affidavit, plaintiff claims that defendant Wang informed plaintiff that all orders from Regal Kitchens, Inc., Florida Building Products, and Vladimir Laminates had to be first placed with defendant Sequoia. By affidavit, plaintiff further contends that, on behalf of these companies, defendant Sequoia then placed purchase orders with plaintiff's office in Hickory, North Carolina, and that, upon receipt of the purchase orders, plaintiff then shipped the products from its North Carolina office to defendant Sequoia and its customers in Florida. Plaintiff was unaware of defendant Sequoia's middleman role until 2007.
Plaintiff provided a summary of forty-four invoices to defendant Sequoia, including invoice numbers, carrier names, and bill of lading numbers. Plaintiff billed defendant Sequoia by forty-five separate invoices which reflected that the items were shipped from "NC to FL." Plaintiff shipped the items to defendant Sequoia and provided copies of shipping bills and bills of lading.
Defendant Sequoia sent checks to plaintiff in North Carolina as payment for these purchase orders. Plaintiff included in the record on appeal copies of fifteen checks dated from 4 August 2006 through 7 February 2007, which were drawn on defendant Sequoia's account, received by plaintiff in North Carolina, and apparently cashed. When added together, the checks reflected a total payment by defendant Sequoia to plaintiff in the amount of $261,603.10. Each check included references to plaintiff's invoice numbers.
In the instant case, there is competent evidence that defendant Sequoia purposefully availed itself of the privilege of conducting activities within North Carolina, by ordering products that were shipped from North Carolina to Florida, and thus invoked the benefits and protections of North Carolina laws. This evidence supports the trial court's presumed factual findings that defendant Sequoia's contacts with North Carolina are sufficient to satisfy N.C. Gen. Stat. § 1.75.4 (5)(d), the long-arm statute, and due process. The trial court properly denied defendant Sequoia's motion to dismiss for lack of personal jurisdiction.
Affirmed.
Judges ELMORE and STROUD concur.
Report per Rule 30(e).